# White, Appellant, v. Trowbridge.

*Partnership—Good will—Transfer of interest—Restraint of trade.*

The mere transfer by one partner of his interest in the good will of the business to his copartners, does not preclude him from entering into a similar business in the same town, and prosecuting it in competition with the old firm of which he had been a member. The contract should expressly state that the retiring partner should not enter into the same business, if that is the intention of the parties.

An agreement to retire from business and not to resume it again is in restraint of trade, and cannot rest upon mere inference.

Good will is the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage.

*Trade-mark—Name—Partnership—Labels.*

A retiring partner in the absence of an agreement to the contrary is not deprived of the right to use his own name in connection with the conduct of his business simply from the fact that his surname is a portion of the trade-mark used by the copartnership of which he was formerly a member, and whose business has been continued by the other partners.

In a trade-mark case a decree will not be entered in favor of the plaintiff where it appears that the trade-mark or labels used by the defendant are not so similar to those of plaintiff in appearance, or in the sound and connection of the words, as are likely to cause a person of ordinary intelligence using ordinary caution, in making purchases, to be misled.

Argued April 25, 1906. Appeal, No. 292, Jan. T., 1905, by plaintiff, from decree of C. P. Crawford Co., No. 2, Nov. T., 1902, dismissing bill in equity in case of H. P. White and Carl Bender, trading as Trowbridge Chocolate Chip Company, v. W. S. Trowbridge. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

THOMAS, P. J., found the facts to be as follows :

1. That for a period of two and one-half years and upwards, prior to January, 1900, the defendant, W. S. Trowbridge, was engaged in the city of Meadville in the manufacture of confectionery, consisting of thin oblong pieces of molasses candy coated with chocolate, and generally known as chocolate chips.

2. That said defendant then claimed, and still claims, to have

been the originator of this particular kind of confectionery, and adopted the name " Trowbridge's Chocolate Chips," by which the same was known in the trade.

3. That defendant, prior to said date, adopted as a trademark the words, " Trowbridge's Chocolate Velvet Chips," and the representation of a bucket filled with chocolate chips, and caused the same to be registered.

4. On January 22, 1900, the said defendant sold an undivided one-third in the business theretofore by him carried on, each to H. P. White and Carl Bender, and the said vendor and his vendees on the same day entered into a copartnership, under the firm name of " Trowbridge Chocolate Chip Company," and from that time until January 11, 1902, the said copartnership engaged in the manufacture of the said Trowbridge chocolate chips in the said city of Meadville.

5. Shortly after the organization of the said copartnership, and upon complaint of a rival manufacturer of confectionery, the said copartnership dropped from the name or trade-mark of said chocolate chips the word " velvet " and substituted for said name or trade-mark, " Trowbridge's Chocolate Chips, the Original," under which name and trade-mark they continued to manufacture said chocolate chips until the dissolution of said partnership.

6. On January 11, 1902, the said copartnership was dissolved, the plaintiffs in the bill having purchased from defendant his interest therein, by written agreement, of which the following is a copy :

" Memorandum of agreement made this 11th day of January, 1902, between Wm. S. Trowbridge of the first part and Harry P. White and Carl Bender of the second part:

" Whereas, the parties hereto entered into a partnership on the —— day of January, 1900, for the manufacture and sale of confectionery, and especially for the manufacture of a quality of confectionery known by the trade-mark of ' Trowbridge Original Chocolate Chips,' and have since said date been engaged in the manufacture and sale of such confectionery in Meadville, Pa., and,

" Whereas, the said Wm. S. Trowbridge has agreed to sell all his rights and interest in the said partnership and business,

" Now this agreement witnesseth, that the said Wm. S.

Trowbridge hereby sells, assigns and transfers to Harry P. White and Carl Bender all the rights, title, interest, property and claim of him, the said Wm. S. Trowbridge, to and in the said partnership business, together with the good will, rights, property, stock bills and accounts receivable, notes and credits, together with all other rights or property used in or connected with the said business and the prosecution thereof.

" In consideration whereof, the said Harry P. White and the said Carl Bender agree to pay to the said Wm. S. Trowbridge the sum of fifteen thousand dollars."

7. Subsequently to the dissolution of said copartnership and the sale of his interest therein by defendant, the plantiffs continued to carry on the same business under the same name and in the same place as was done prior to said sale and dissolution of the copartnership, and in the prosecution of said business have advertised extensively, and the said chocolate chips had, prior to said dissolution and has had subsequently thereto, a large and extensive sale, the said company now employing about 150 hands, and is manufacturing about 6,000 pounds thereof per day.

8. That on June 11, 1902, plaintiffs caused to be registered by the commissioner of patents a print, the title of which is " Trowbridge's Chocolate Chips," which said print has been by them continuously used as a trade-mark or advertisement on the pails or larger packages in which said confectionery has been packed and shipped.

9. The plaintiff company packs or puts up for sale their chocolate chips in common stock candy pails or buckets of two sizes, one of which holds about twenty-five pounds and the other about ten pounds, and in paper or pasteboard boxes of convenient size to hold five, one, one-half and one-fourth pounds respectively. The pound boxes are dark brown in color, tied by two small white ribbons, and the dimensions are $10\frac{1}{4}$x$2\frac{1}{4}$x$1\frac{1}{4}$ inches ; the half-pound boxes are dark brown in color and the dimensions are $5\frac{3}{8}$x$2\frac{3}{8}$x$1\frac{1}{2}$ inches ; and the quarter-pound boxes are inclosed in white wrappers, and the dimensions are $6\frac{5}{8}$x$2\frac{3}{8}$x$\frac{3}{4}$ inches.

10. Upon each " chip " manufactured by the plaintiff company is stamped upon one side the word " Trowbridge."

11. Upon all of the larger packages put up by plaintiffs is

placed a white label corresponding in appearance to the registered print, consisting of the word "Trowbridge" at the top thereof, in letters three-fourths of an inch high, and of the words "Chocolate Chips" at the bottom thereof, one and one-fourth inches to one and three-fourths inches high,—varying with the size of the label,—all of a dark red color. In the center of said label is the picture of a punch bowl filled with chocolate chips; the coloring of the punch bowl is blue, and of the chips, a light chocolate. Above the punch bowl and between the same and the word "Trowbridge" is printed in blue letters, three-eighths of an inch high, within quotation marks and in oval form, the word "Original." Below the punch bowl and between the same and the words "Chocolate Chips" is printed in a straight line, in blue letters, one-eighth inch high and within quotations, the words "Name on every chip."

12. Upon the one-pound and the half-pound boxes is printed in gold, in heavy script type, slightly diagonal across the top of the box, the word "Trowbridge's," and beneath said word and as a continuation thereof extends a heavy scroll or flourish in the same color, in which scroll is printed in small brown letters the words "Name on every chip." Below and somewhat to the right of the word "Trowbridge's" is printed in gold and in heavy ornate letters, one-fourth inch high, the word "chocolate" on a slightly oval line, and immediately below said word and in similar type and the same color, is the word "chips," printed on a straight line. Above and somewhat to the left of the word "Trowbridge's" is a somewhat irregular circular gold background having thereon a small brown circle, three-fourths inch in diameter, in the center of which is a monogram consisting of the letters "W. S. T.," above which in circular form is printed in small brown letters the word "Meadville," and below which in similar form and type the letters "Penn. U. S. A."

13. Upon the white wrapper, inclosing the quarter-pound boxes, is found printed in large script type and beginning on the left and extending slightly diagonally across the top of the box the word "Trowbridge's;" beneath said word, and commencing somewhat more than half way from its beginning, and parallel thereto, in similar type is the word "Chocolate;" beneath which last-mentioned word, and commencing about half way from end to end thereof, parallel thereto, and in similar

type, is the word " chips ; " beneath the word " Trowbridge's," parallel thereto and commencing on a line with the beginning thereof, is printed in ornate letters, one-fourth inch high, the word " Original." At the upper right corner is printed in figures, one-half inch high, the number " 10," to the right of which is a letter " c," one-fourth inch high, crossed by a perpendicular mark. On both edges of said box, printed in Gothic type, one-fourth inch high, are the words, " Name on every chip." All of which printing is in gold. At each end of said box is placed a seal having a gold background and brown edges, within which is a small brown circle three-fourths of an inch in diameter, within which and at the top thereof, in small brown letters, is printed the word " the," on a straight line ; beneath which in larger brown letters is printed the word " original ; " beneath which, in small brown letters and parallel thereto is the word " and," and at the bottom in large brown letters and parallel with the brown circle, the word " best."

14. On their bill and letter heads plaintiffs use a small design of the punch bowl filled with chips, above which and somewhat diagonal thereto, in heavy script type, with flourish or scroll beneath, is the word " Trowbridge ; " to the right and somewhat below the end of said word is printed horizontally in Gothic type the words " Chocolate Chip," beneath which, in similar type and parallel thereto, is the abbreviation " Co." Above said punch bowl in small Gothic letters, and within quotation marks, are the words " The Original." Below said punch bowl in smaller type is found the words " Name on every chip." The whole being somewhat ornamented and displaying at each side of the punch bowl packages of chocolate chips, the coloring being in white and black.

15. About the middle of September, 1902, the defendant, W. S. Trowbridge, began in the city of Meadville the manufacture of confectionery known as chocolate chips, and similar in form and appearance to the same kind of confectionery manufactured by plaintiff and numerous other persons or firms throughout the country.

16. The chocolate chip manufactured by defendant is plain and has no printing or stamp impressed thereon.

17. The said defendant is advertising and offering for sale his said confectionery and has solicited and is soliciting trade

therefor generally, and has adopted and is using a stamp or mark on his labels, packages, bill and letter heads, hereinafter more fully described.

18. The said defendant puts up his said confectionery in common or stock candy pails of a capacity of about ten and twenty-five pounds, respectively, and in common paper or pasteboard boxes or packages in quantities of five, one, one-half and one-fourth pounds. The pound boxes are white in color, and of the dimensions of $7 \times 2\frac{3}{8} \times 2\frac{3}{8}$ inches; the half-pound boxes are white in color and of the dimensions of $5\frac{3}{8} \times 2\frac{3}{8} \times 1\frac{1}{2}$ inches; the quarter-pound boxes are inclosed in a wrapper of chocolate color, and the dimensions are $6\frac{5}{8} \times 2\frac{1}{2} \times \frac{3}{4}$ inches.

19. From two-thirds to three-fourths of the said chocolate chips sold by either plaintiffs or defendant is put up in candy pails.

20. The defendant uses upon his pails a white label, at the top of which is printed horizontally in heavy black Gothic letters about one-half inch high the words " The Originator." Somewhat below is a circle, five and one-half inches in diameter, above which and parallel thereto is printed in heavy black Gothic letters, five-eighths inch high, the name " W. S. Trowbridge," which name is followed by a period; and below the said circle, in similar type and color, the words "Meadville, Pa." Within and at the top of the said circle and parallel thereto, in heavy black Gothic letters, seven-eighths inch high, is the word " Chocolate," and at the bottom of said circle and parallel thereto, in the same type the word " Chips." Across the center of said circle is printed horizontally in heavy red script letters the word " Twentieth," and immediately below, parallel thereto and extending somewhat to the right thereof, in the same type and color the word " Century."

21. The design used by defendant in his bill and letter heads, and probably on some smaller labels, advertisements, etc., is the same in language, form and colors as the label above described, being merely reduced in size.

22. The pound and half-pound boxes used by defendant have printed somewhat diagonally across the tops in not very heavy script type the words " Twentieth Century," with a flourish extending from the capital " C " back beneath and parallel with the word " Twentieth." Preceding said words, on a line with

the top of the small letters thereof, in small Gothic type is the word " The." Beneath the word " century," on a horizontal line is printed in inclined Gothic type about one-eighth inch high, the words " Chocolate Chips," and immediately beneath and parallel thereto is printed in somewhat smaller type the name " W. S. Trowbridge." To the left of said writing is the design of a griffin, holding a partly opened scroll, upon which is printed, in small inclined Gothic type the word " Purity," beneath which in the same type is the word " Excellence." All of said printing and stamping is the color of silver.

23. The quarter-pound boxes used by defendant are wrapped in chocolate-colored paper, upon which is printed in rather large script type and diagonally across the top of the box, the words " Twentieth Century," beneath which, parallel thereto, and beginning somewhat to the right thereof and in the same type are the words " Chocolate Chips." Somewhat below is printed horizontally in Gothic type one-fourth inch high, the name "W. S. Trowbridge." Above and to the left of the word " Twentieth " and within the flourish to the letter " T " is printed in ornate type, the word " The," and over the word " Twentieth," and parallel thereto, is found in figures, three-eighths inch high, the number " 10," followed by the letter " c," one-fourth inch high, through which extends a perpendicular line. To the left of said printing is the design of a griffin, holding a partly opened scroll, upon which in small inclined Gothic type is printed the word " Purity," and beneath this and in the same type the word " Excellence." All of said printing and stamping is in the color of silver.

24. As a means of advertisement, defendant has had prepared and used a window screen or poster about 30x10 inches, through the center of which horizontally appear the words " Chocolate Chips," each word beginning with a large bright red capital " C," five and three-fourths inches high, shaded with dark green. The balance of the said words are printed in large black lower-case ornate type, two inches high, above and below which black letters are dark green lines and ornaments. Directly above said words are printed horizontally in heavy script type, about one inch high, in bright red, the words " Twentieth Century." To the left of said words and on the same elevation as the tip of the capital " C's " in black ornate

letters, one inch high, is the word "The," beneath which in a wave line, in black ornate letters, one and one-fourth inches high, is the word "Meadville," and below the said last-mentioned word in the same type and color as the word "The" is printed horizontally, the word "Chip." At the right of said screen or poster and on the same elevation as the top of said capital "C's" are the black ornate letters, one and one-fourth inches high, "W. S.," with periods after each. Beneath said letters on a wave line and in letters of the same type and color the word "Trowbridge," beneath which word in black ornate letters, one inch high, is printed horizontally the word "Originator."

25. By correspondence with dealers and otherwise the defendant has held himself out as "being the originator of the Chocolate Chips."

26. The trade-mark or labels used by defendant are not so similar to those of plaintiffs in appearance, or in the sound and connection of the words, as are likely to cause a person of ordinary intelligence, using ordinary caution, in making purchases to be misled.

The court entered a decree dismissing the bill.

*Error assigned* was decree of the court dismissing the bill.

*Thomas Roddy* and *Manley O. Brown*, for appellant.—The ownership of a trade-mark has in general been considered a right of property, and equity will protect that right from infringement. Proof of fraud is not required. The mere violation of the rights is sufficient to induce the exercise of the equity powers of the courts: Menendez v. Holt, 128 U. S. 514 (9 Sup. Ct. Repr. 143).

The good will of a partnership is part of the property of the firm. Of this good will is the firm name. In a proper case the court of equity will perpetually enjoin such unlawful use of the name by the retiring partner.

A surname may become impersonal when attached to articles of manufacture and becomes the name by which such article is known in the trade. In case of sale of the rights to manufacture the same pass also, but it does not pass as good will, but as trade-mark: Vonderbank v. Schmidt, 44 La. Ann. 264 (10 So.

Repr. 616); Beach on Modern Eq. Juris. sec. 762; Russia Cement Co. v. LePage, 147 Mass. 206 (17 N. E. Repr. 304); Ayer v. Hall, 3 Brews. 509.

If a trade-mark be imitated so closely as to deceive the public, its use will be enjoined: Colton v. Thomas, 2 Brews. 308; Witthaus v. Wallace, 2 W. N. C. 610; Shepp v. Jones, 35 W. N. C. 29; Parmer v. Harris, 60 Pa. 156; Colladay v. Baird, 4 Phila. 139; Pratt's App., 117 Pa. 401; Putnam Nail Co. v. Dulaney, 140 Pa. 205.

*George W. Haskins*, with him *A. G. Richmond* and *John O. McClintock*, for appellee.—The sale of the good will does not involve any obligation on the vendor not to exercise the same trade. If the vendee of such good will desires to protect himself from such a contingency, he should do it by an agreement: Palmer v. Graham, 1 Parsons' Select Equity Cases, 476; Rupp v. Over, 3 Brewster, 133; Fish Brothers Wagon Co. v. Titus G. Fish, 16 L. R. A. 453; Cottrell v. Babcock Printing Press Mfg. Co., 54 Conn. 122 (6 Atl. Repr. 791); Chittenden v. Witbeck, 50 Mich. 401 (15 N. W. Repr. 526); Williams v. Farrand, 14 L. R. A. 161; Bassett v. Percival, 87 Mass. 345; Hall's App., 60 Pa. 458.

It is not enough that there may be a possibility of deception. The offending label must be such that it is likely to deceive persons of ordinary intelligence: Brown v. Seidel, 153 Pa. 60; Heinz v. Lutz, 146 Pa. 592; Hoyt v. Hoyt, 143 Pa. 623; Howe Scale Co. v. Wychoff et al., 198 U. S. 118 (25 Sup. Ct. Repr. 609); Holzafel's Co. v. Rahtjens' Co., 183 U. S. 1 (22 Sup. Ct. Repr. 6); Brown Chemical Co. v. Meyer, 139 U. S. 540 (11 Sup. Ct. Repr. 625); Carmichel v. Latimer, 11 R. I. 395; Fish Bros. Wagon Co. v. Fish, 16 L. R. A. 453; Duryea v. Natl. Starch Mfg. Co., 79 Fed. Repr. 651.

OPINION BY MR. JUSTICE POTTER, June 27, 1906:

Counsel for appellants have here advanced the proposition that by the mere transfer of his interest in the good will of the business, the defendant was precluded from entering into a similar business in the same town, and prosecuting it in competition with the old firm, of which he had been a member. The position is wholly untenable. "Good will" has been de-

fined by Judge COOLEY as the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage : Chittenden v. Witbeck, 50 Mich. 401 ; and Lord ELDON in Cruttwell v. Lye, 17 Ves. Jr. 335, spoke of it as " simply the probability that old customers will resort to the old place." There is a very ample discussion of this question by the supreme court of Michigan, and a full citation of the authorities bearing on the point in Williams v. Farrand, reported in 14 L. R. A. 161. It is there said, " the doctrine that a retiring partner who has conveyed his interest in an established business, whether the good will be included or not, cannot personally solicit the old customers of the firm, has no support in principle. A retiring partner conveys in addition to his interest in the tangible effects, simply the advantage that an established business possesses over a new enterprise."

In the present case the contract for the sale of defendant's interest in the business was in writing, and we do not find in it anything which can be construed into an agreement by the defendant to refrain from engaging in a similar business, under his own name.

An agreement to retire from business, and not to resume it again, is in restraint of trade, and cannot rest upon mere inference : Hall's Appeal, 60 Pa. 458. So long as the defendant does not attempt to sell his goods as those of the old firm, or represent that his business is a continuation of the old firm, he is at liberty to engage under his own name, honestly and in good faith, in the same line of business and in the same locality.

We think the learned judge of the court below was entirely correct in his statement of the third conclusion of law, in which he says, " The defendant is not deprived of the right to use his own name in connection with the conduct of his business simply from the fact that his surname is a portion of the trade-mark used by the copartnership of which he was formerly a member, and whose business has been continued by plaintiffs." And in the further comment made by him in overruling the exception to this finding, as follows : " He has no right to use said name for the purpose of misleading the public or to induce persons to deal with him in the belief that they are dealing with or ac-

quiring the product of the old firm, or its successors in business. He also has the same right to hold himself out as the person who invented or originated the kind of wares he offers for sale, subject to the same limitations." And in this connection it appears that the court below found as a fact, upon evidence which seems to us sufficient, that the defendant had not in this respect infringed upon or violated the rights of the plaintiffs.

So too in deciding the remaining question in this case, as to whether the defendant has so imitated the trade-mark or labels of the plaintiffs as to interfere unfairly with their business, or deceive the public, the court below has applied a well-established rule, and has found that " the trade-mark or labels used by defendant are not so similar to those of plaintiffs in appearance, or in the sound and connection of the words, as are likely to cause a person of ordinary intelligence, using ordinary caution, in making purchases to be misled."

This finding is really the gist of the whole case, for if the action of the defendant has deceived or is likely to deceive purchasers, so that they have purchased or will probably accept the goods of the defendant under the mistaken notion that they are those of the plaintiffs, then the defendant should be enjoined from any such use of the labels. But measured by this well-established rule, it does not appear from the evidence, that the defendant has in any sense offended. A comparison of the labels of the respective parties shows such marked and striking differences that no one who has eyes to see with, and uses them, can fail to notice the differences. We cannot see that the similarity is sufficient to convey a false impression, or to mislead the ordinary purchaser. The labels of defendant distinctly refer to his own manufacture, and show that the goods are those of W. S. Trowbridge, and not those of the plaintiffs, the Trowbridge Chocolate Chip Company. While both sets of labels are descriptive of the same article of manufacture, yet the label of plaintiffs bears upon its face a prominent and distinctive emblem, a large bowl filled to the brim with chocolate chips, while the corresponding label of defendant is entirely devoid of any emblem, but has instead the distinctive and arbitrary descriptive words " twentieth century." The distinction between the labels intended for smaller packages is equally apparent.

In fact, the real difficulty in this case is that the plaintiffs have reason to fear, not that the public will be deceived, but that if the fact becomes known that the defendant is engaged in the same business the public will purposely purchase the goods made by him for the reason that he was and is the originator of the confection known as chocolate chips. In other words, what the plaintiffs really desire is protection from the business competition of the defendant, carried on openly and frankly by him under his own name. As we have already seen, this was something which they did not provide for under the terms of the written agreement when they purchased from him his interest in the business, and they cannot now be permitted indirectly to attain this end which they failed to stipulate expressly for in negotiating the purchase, and which presumably was not included in fixing the amount of the consideration. The learned judge of the court below has with great industry and accuracy examined and assembled the cases bearing upon the exact questions here in dispute, has drawn from them the legal principles upon which they rest, and has with precision applied those principles to the facts of this case.

We see no reason whatever to differ from any of the conclusions reached by him.

The exceptions are overruled, and the decree is affirmed.