## Lansdale Clinic v. Graham

*Landis, Tracey & Williams* and *John E. Landis*, for plaintiff.

*Cassin W. Craig* and *Wisler, Pearlstine, Talone & Gerber*, for defendant.

FORREST, P. J., July 31, 1963.—Plaintiff, a partnership, filed its amended complaint seeking to enjoin defendant from practicing medicine or surgery within a radius of 15 miles of the Borough of Lansdale, for a period of 10 years after his withdrawal from the partnership. Defendant filed his answer and counterclaim, to which plaintiff made reply.

  *    *    *    *    *

### Discussion

Plaintiff-partnership has alleged and sought to prove that plaintiff and defendant entered into an oral agree-

ment whereby defendant became a partner and became subject to the duties of a withdrawing partner set forth in the 16-page long formal partnership agreement of The Lansdale Clinic. "Written articles of agreement are not necessary to establish a partnership. The relationship can and often does exist by virtue of a verbal agreement and may be either express or, . . . implied from a consideration of all the attending facts and circumstances": Pappas v. Klutinoty, 383 Pa. 184, 187 (1955).

What was said or expressed when plaintiff and defendant entered into their verbal agreement? Mr. Hoffman, Business Manager of The Lansdale Clinic, testified that he acts as secretary at the meetings of the partners; that he takes notes and writes up the minutes of such meetings in a minute book in his own hand. He testified that he transcribed his notes of the meeting of May 9, 1960, which he made contemporaneously therewith, into minutes approximately a week later. There is no evidence that copies of these minutes were distributed to the partners later or that the minutes were read at any subsequent meeting of the partners.

Mr. Hoffman testified that the partnership agreement was not read to the persons assembled at the meeting on May 9, 1960; that he did not have the agreement with him at that time; that the terms of the agreement were not explained in any way to Dr. Maloney or to defendant; that it is possible that the words "all other terms of the agreement of 4/1/58 to apply" were inserted after the minutes of the meeting were prepared; that he does not remember when those words may have been inserted; that "If I read over this and found that I had omitted something, or it didn't say what I intended it to say, I would have written it in later." He said that he cannot recall whether he discussed the "omission" with anybody prior to inserting it in the book. Later he said that he "didn't discuss it with anybody, because I

would have no reason to." Everything considered, the chancellor is of the opinion that Mr. Hoffman was not completely candid in relating his review of the minutes and his subsequent addition thereto.

Only two of the members of the plaintiff-partnership testified as to what transpired at the crucially important meeting of May 9, 1960. Although the other members are busy doctors, it might seem that as plaintiffs they would have testified if by doing so they could have aided their cause. An adverse inference is drawn from their failure to testify. . . . " 'Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury [or finder of fact] may draw an inference that it would be unfavorable to him' ": Beers v. Muth, 395 Pa. 624, 627 (1959).

Doctor Donald W. Maloney, one of the partners of The Lansdale Clinic, testified that at the meeting of May 9, 1960, the written agreement was not read, no copy was distributed, and that he recalls no specific discussion of the written agreement. Discussion relative to Maloney and defendant's entry into the partnership was limited to financial matters. There was no mention of a restrictive covenant.

Defendant testified that never, before he was admitted to the partnership, was he shown a copy of the written partnership agreement. In particular, never did any partner or agent of the partnership mention to him that a restrictive covenant, oral at that, was an obligation of the partnership. Defendant corroborated Dr. Maloney's testimony that at the meeting of May 9, 1960, the discussion relating to defendant and Maloney's admission to the partnership was confined to finances.

Defendant frankly admitted that he assumed that there was a restrictive covenant binding the original

partners. He also anticipated that the plaintiff-partnership would request him to sign a restrictive covenant. However, his expectation never materialized. Is he, nonetheless, bound by implication? "Unless the partnership articles or the dissolution agreement expressly restricts the right of a former member of a dissolved partnership from competing against the expartners by engaging in the same line of business, or by soliciting old customers or suppliers, he may engage in these activities. The courts, however, will not imply such restrictions into agreements": Denawetz v. Milch, 407 Pa. 115, 120 (1962).

What amount is defendant entitled to as a withdrawing partner? There was no express agreement between plaintiff and defendant in this particular. Hence, the following rule applies: "Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property, and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; . . .": Uniform Partnership Act of March 26, 1915, P. L. 18, sec. 18, 59 PS §51. According to this rule, defendant is entitled to the full $9,625.23, which he contributed in cash or in kind to the partnership, and plaintiff should not withhold the sum of $5,461.29, which represents accounts receivable and inventory of drugs and supplies.

The prothonotary entered judgment for defendant and against plaintiff for a specific sum of money. Upon default in an equity case, the prothonotary may enter a general judgment against the party in default, but may not enter a judgment for money: 10 Anderson Pa. Civ. Pract. 235 (1962 pocket parts, p. 104). This principle was followed in Shook v. Eddinger, 36 Northamp. (January 25, 1962), where the court decided that the prothonotary's entry of a money judgment for plaintiff for want of answer in an action in equity was not authorized under Pa. R. C. P. 1511. Hence, the judgment entered should be stricken off for violation of the rule

of civil procedure. However, defendant is entitled to a decree in the sum of $5,461.29, which is even larger than the judgment which was entered.

### Decree Nisi

And now, July 31, 1963, plaintiff's complaint is dismissed. The prothonotary is ordered to strike off the judgment entered in this case in favor of defendant and against plaintiff in the amount of $4,163.94.

The prothonotary is ordered to enter a judgment in favor of defendant, Howard D. Graham, and against plaintiff, The Lansdale Clinic, in the amount of $5,461.29.

Costs on plaintiff.

The prothonotary shall give prompt notice hereof to the parties.

Exceptions may be filed within 20 days after such notice. If no exceptions are filed, this decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree.