## Seidman v. Wilder Industries Inc.

*Dennis M. Abrams,* for plaintiff.
*Daniel B. Pierson,* for defendant.

TAKIFF, *J.*, October 14, 1987 — Presently before the court is a motion for directed verdict pursuant to Pa.R.C.P. 226(b) on behalf of defendants Wilder Industries Inc. and Jerome Muchnick. For the reasons set forth below, defendants' motion is granted.

Plaintiff Leonard Seidman filed a complaint on May 15, 1986, and a motion for writ of seizure on

December 17, 1986, seeking, inter alia, replevin of five 7″ x 5″ looseleaf notebooks and accompanying 3″ x 5″ file cards containing information on the sources of paper supply and on customers. The 3″ x 5″ file cards have been returned to Seidman, but defendants resist the return of the notebooks on the basis that these looseleaf volumes "contain the names, addresses, personal contacts, purchase records or sales volume, product requirements, cyclical product requirements, Wilder pricing structure and . . . are Wilder's trade secrets and are confidential. The information was compiled over years, all at Wilder's expense from leads generated by Seidman or Wilder personnel in aid of Wilder's marketing efforts in paper board and fine paper."

The threshold inquiry is whether these looseleaf notebooks contain legally protectable trade secrets; if so, they belong exclusively to defendant, Wilder Industries. In contrast, however, where "an employer has no legally protectable trade secret, an employee's aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer." *Felmlee v. Lockett,* 466 Pa. 1, 351 A.2d 273, 276 (1976). Clarification on "trade secrets" has been expressed in *Anaconda Co. v. Metrie Tool & Die Co.,* 485 F. Supp. 410, 421 (E.D. Pa., 1980) where the court stated (at 485 F. Supp. 420):

". . . [T]he law provides no precise definition or litmus test of what constitutes a trade secret. The more comprehensive definition is set out in comment b to the . . . Restatement of Torts §757 (1939), which has been adopted in Pennsylvania as well as

many other jurisdictions. *College Watercolor Group Inc. v. William H. Newbauer Inc.*, 468 Pa. 103, 360 A.2d 200 (1976); *Sperry Rand Corp. v. Pentronix Inc.*, 311 F. Supp. 910 (E.D. Pa., 1970) See *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 474-76, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974)."

Comment b states, in pertinent part:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an advantage over competitors who do not know or use it. . . .

". . . The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. Matters which are completely disclosed by the goods which one markets cannot be his secret. Substantially, a trade secret is known only in the particular business in which it is used. It is not requisite that only the proprietor of the business know it. He may, without losing his protection, communicate it to employees involved in its use. . . . Nevertheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information."

As we have previously stated, Pennsylvania trade-secret law follows section 757 of the Restatement of Torts. That section creates a cause of action against a person "who discloses *or uses* another's trade secret." (emphasis added). The American Law Institute's comments explicitly state that, "The rule stated in this section protects the interest in a trade secret against both disclosure *and adverse* use." Restatement of Torts §757, Comment c at 8 (1939) (emphasis added). Thus, the protection of trade secrets under section 757 and Pennsylvania Law is

not limited to protection against the initial disclosure, but embraces protection against subsequent unauthorized use as well."

In *Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir. 1953) the court fleshed out the general principles enunciated above by observing:

". . . All that is required is that the information or knowledge represent in some considerable degree the independent efforts of its claimant. Clearly plaintiffs' plans and customer lists fall within this broad field of knowledge and may properly be the subject matter of a trade secret. *Pressed Steel Car Co. v. Standard Steel Car Co.*, 210 Pa. 464, 60 A.4; *Chas. H. Elliott Co. v. Skillkrafters Inc.*, 271 Pa. 185, 144 A. 488."

Although it is undisputed that Seidman refused to sign a proffered restrictive covenant concerning his sales of paper products while employed by Wilder Industries, nevertheless, it is well-established that the employer-employee relationship of Wilder and Seidman implies a status of confidentiality, even in the absence of a restrictive covenant, against use or disclosure of such information.

"The duty of the servant not to disclose the secrets of the master may arise from an express contract, or it may be implied from their confidential relations . . . . Where confidence is reposed, and the employee by reason of the confidential relation has acquired knowledge of trade secrets, he will not be permitted to make disclosure of those secrets to others to the prejudice of his employer." *Macbeth-Evans Glass Co. v. Schnelbach*, 239 Pa. 76, 86 Atl. 688, 691 (1913).

Defendant contends that Seidman "accepted the benefits of Wilder's employment and therefore must certainly be held to a confidential and fiduciary

standard as to their internal marketing information."

The duties and obligations imposed by law upon the employee, with respect to confidentiality of customer contacts, have been delineated by the Supreme Court of Pennsylvania:

"In almost all commercial enterprises . . . contact with customers or clientele is a particularly sensitive aspect of the business . . . In most business . . . as the size of the operation increases, selling and servicing activities must be at least in part decentralized and entrusted to employees whose financial interest in the business is limited to their compensation. The employer's sole or major contact with buyers is through these agents and the success or failure of the firm depends in part on their effectiveness . . . [t]he possibility is present that the customer will regard, or come to regard, the attributes of the employee as more important in his business dealings than any special qualities of the product or service of the employer, especially if the product is not greatly differentiated from others which are available. Thus, some customers may be persuaded or even be willing, to abandon the employer should the employee move to a competing organization or leave to set up a business of his own.

"The employer's point of view is that the company's clientele is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property. Certainly, the argument goes, the employee should have no equity in the custom which the business had developed before he was employed. Similarly, under traditional agency concepts, any new business or improvement in customer relations attributable to him during his employment is for the sole benefit of the principal. This is

what he is being paid to do. When he leaves the company he should no more be permitted to try to divert to his own benefit the product of his employment than to abscond with the company's cashbox." *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250, at 253 (1976), citing Blake Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 653-54 (1960).

Plaintiff contends that, ". . . it is not enough to determine whether the looseleaf notebooks contain 'trade secrets' . . . Rather, the relevant inquiry must be whether these 'trade secrets' are particular secrets of Wilder or are *general secrets* of the paper industry," and asserts that "the notebooks at best, contain general secrets of the paper industry." As support for this proposition, Plaintiff cites, inter alia, the following:

(1) Generally, customer lists are not considered particular secrets and thus are *not* protected, e.g. *Capital Bakers Inc. v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967) and *Denawetz v. Milch,* 407 Pa. 115, 178 A.2d 701 (1962) (holding lists of customers and suppliers do not constitute trade secrets).

(2) A restrictive covenant, tendered to but not signed by an employee, is evidence that the data is not confidential. *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957).

(3) Leonard Seidman at all times maintained exclusive possession and control over the notebooks, even to the point of keeping them at his home at night and on the weekends, with Wilder's approval.

(4) Intimate knowledge of the need, use and demand for the product, material sources and costs, labor costs, the suppliers and accounts payable, customers and accounts receivable, and advertising method and material, are not trade secrets. *Van*

*Products Co. v. General Welding & Fabricating Co.,*
419 Pa. 248, 213 A.2d 769 (1965).

(5) The data accumulated during Seidman's field
trips and maintained on file cards and in notebooks
was nothing more than the recorded results of
Seidman's acquisition of general knowledge and
skill in this field.

Defendant asserts, inter alia, the following:

(1) Plaintiff did not originate the notebook system until after he was employed by Wilder.

(2) While employed by Wilder, Seidman received
compensation and reimbursement of all business
expenses.

(3) Wilder solely relied on plaintiff to represent it
with contact persons at the paper sources and with
customers.

(4) The information contained in the notebooks,
other than the names of paper sources or paper purchasers, addresses, telephone numbers and marketing contacts, is confidential information to defendant and constitutes, in substantial part, defendant's
confidential internal marketing information containing notations on its source of supply, its customer lists, pricing structure and intimate commercial
contacts with its suppliers and customers.

(5) The use of such information by a competitor
would create an unfair and anti-competitive
advantage.

(6) Any release of this material to Seidman, who
is now employed by Grant Paper Company, a major
competitor of Wilder, would provide Grant with a
substantial number of Wilder's board and fine paper
sources and customers together with information
on sales volume, product mix, pricing structure,
commercially intimate contacts developed over the
years, and the accounts' cyclical or periodic needs.

After careful consideration, it is clear to us that the five looseleaf notebooks which contain confidential data accumulated by Seidman while he was employed by Wilder Industries Inc. qualify as trade secrets, and Seidman assumed a burden and duty not to use this confidential material to defendant Wilder Industries' detriment. To permit Seidman to take this information with him for the use and benefit of Grant, a competitor of Wilder Industries, would be to aid and abet a breach of that duty. Consequently, Seidman is entitled to the return of the five looseleaf notebooks only if the data entered thereon during the course of his employment by Wilder Industries is redacted to prevent its dissemination to a competitor.

The judicial role in the grant or denial of summary judgment has been clearly defined. Summary judgment may be granted when the moving party demonstrates that there is no genuine issue as to any material fact, and the record, viewed in light most favorable to the nonmoving party, reveals that the moving party is entitled to a judgment as a matter of law. Rule 1035, Pa. R.C.P. It is not part of our function to decide issues of fact. At this time, we are solely to determine whether there is an issue of fact to be tried. *Acker v. Palena,* 260 Pa. Super. 214, 393 A.2d 1230 (1978).

We are mindful that summary judgment is appropriate only in the clearest cases, and in the case sub judice, there is no dispute concerning the facts material to this adjudication. The uncontroverted facts are that Seidman was employed by Wilder Industries and this employer-employee relationship implied a status of confidentiality. Since the information in the notebooks was obtained during the course of Seidman's employment with Wilder Industries and contains the "particular trade secrets of

Wilder Industries," this material must be redacted before the notebooks are returned to Leonard Seidman.

After the presentation of evidence in defense, upon oral or written motion of any party, a directed verdict is a proper method of terminating the action where there is insufficient evidence to support it. *Highland Tank & Mfg. Co. v. Duerr,* 423 Pa. 487, 225 A.2d 83 (1966); Pa. R.C.P. 226(b). Accordingly, we grant defendants' motion for summary judgment and enter the following

## ORDER

And now, this October 14, 1987, it is hereby ordered and decreed that the motion of defendant for summary judgment is granted and that the five looseleaf notebooks be returned to Leonard Seidman after the data entered during the course of his employment by Wilder Industries has been redacted.