## John H. Gates, Trading as John H. Gates Coal Co. *v.* Gates Coal Co., Inc.

158

Argued March 15, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*William H. Neely,* for appellant.—A surname is incapable of exclusive appropriation by anyone as against others of the same name, who are using it legitimately in their own business: 47 A. L. R. 1190; R. C. L. Volume 26, page 855; Brown Chemical Company v. Meyer, 139 U. S. 540; Tharp-Bultman-Son-

theimer Company v. Tharp-Sontheimer-Tharp (La.), 85 So. 906, 908; Bernhard v. Bernhard (N. Y.), 142 N. Y. S. 94, 98; Cash v. Cash, 86 L. T. N. S. 211.

*David M. Wallace,* and with him *John W. Jacobs* and *Henry E. Harner,* for appellee.—The similarity of names results in confusion and consequent injury: North Cheshire and Manchester Brewing Co. v. Manchester Brewing Co., (1899), Law Reports Appealed Cases, p. 83, Holmes, Booth and Haydn v. Holmes, Booth and Atwood Mfg. Co., (1870), 37 Conn. 278; Goldberg v. Zaizel, (1929), 25 Luzerne Leg. Reg. 387; Dollar Cleaners & Dyers, Inc. v. Orange Dollar Cleaning Co., 13 D. & C. 374; Penn Hardware Co. v. Penn Hardware Co., (1910), 3 Berks County Law Journal 6; Charles S. Higgins Co. v. Higgins Soap Co., (1895), 144 N. Y. 462; Russian Cement Co. v. LePage, (1888), 147 Mass. 206.

OPINION BY PARKER, J., July 13, 1934:

The defendant has appealed from a decree of the court below sustaining the principal averments of a bill filed by John H. Gates, trading as John H. Gates Coal Company, and issuing an injunction, the effect of which was to require Gates Coal Company, Inc., a Pennsylvania corporation, to change its name.

As the findings of fact by the chancellor are sustained by competent evidence, and as there is but one assignment of error as to findings of fact, and that not material to the question involved, we will state the facts as found. John H. Gates for twenty-two years had been actively engaged in conducting a retail coal business in Dauphin County with an office in Harrisburg. Until 1921 he was in partnership with his father, and thereafter was associated with his father's legal representatives until 1924 when he acquired the interest of the estate of his father. Since that time

he has been the sole owner of the business and has traded under the name "John H. Gates Coal Company," and since November, 1918, that name has been registered under the Fictitious Name Act of 1917. He has used a trademark, "Gates Clean Coal." J. Warren Gates, a brother of the plaintiff, was employed in this business until 1924 when he embarked in the business of selling coal at wholesale in Pennsylvania and four or five other states. In November, 1931, J. Warren Gates became one of the incorporators of the "Gates Coal Company, Inc.," being the principal stockholder and the owner of ninety-eight per cent of the stock. Since the incorporation, he has followed the same line of business at the same place. Only a small proportion, two per cent, of his sales were for performance in the County of Dauphin. This corporation has not engaged in the retail coal business "and is not in competition with plaintiff's business," but by the terms of its charter is authorized to engage in a retail business. The plaintiff has not suffered any financial loss as a result of the organization of the defendant company and did not learn of its incorporation until after the charter was granted.

It is a well settled rule that no one shall, by imitation or unfair device, induce the public to believe that the goods he offers for sale are the goods of another and thereby appropriate to himself the value of a reputation which his rival has acquired for his own merchandise. This prohibition against unfair competition has extended to the use of a rival's packages, names, insignia, or other distinctive title or mark: 26 R. C. L. 875. "There are two classes of cases involving judicial interference with the use of names, first, where the intent is to get an unfair and fraudulent share of another's business, and second, where the effect of defendant's action, irrespective of his intent, is to produce confusion in the public mind and con-

sequent loss to the complainant. In both cases the courts of equity administer relief without regard to the existence of a technical trademark": Amer. Clay Mfg. Co. v. Amer. Clay Mfg. Co., 198 Pa. 189, 193, 47 A. 936; North Cheshire, etc., v. Manchester Brewing Co., L. R. Appealed Cases 83.

The rule just stated is, however, frequently modified by an equally well settled principle giving one the benefit of the use of his own name. "Every man has an absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. Where the only confusion created is that which results from the similarity of the names the courts will not interfere. A person cannot make a trademark of his own name, and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business": Meneely v. Meneely, 62 N. Y. 427, 431. The right to use one's own name is nevertheless subject to the proviso that he shall not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. Such inconvenience or loss as may result from an honest use of a person's name in his business, by reason of its interference with the business of another having the same name is regarded as damnum absque injuria: Russia Cement Co. v. LePage, 147 Mass. 206, 208, 17 N. E. 304. It is also true that one may deprive himself of his right to use his own name by contract. These principles are quoted and approved in the case of Seligman v. Fenton, 286 Pa. 372, 133 A. 561, and

are applicable to the use of the family or surname alone.

There remains for consideration the right of an incorporator to use his own name as the whole or part of a corporate name. In the case of Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 136, Mr. Chief Justice FULLER thus answers the question: "But if every man has the right to use his name reasonably and honestly, in every way, we cannot perceive any practical distinction between the use of the name in a firm and its use in a corporation. It is dishonesty in the use that is condemned whether in a partnership or corporate name, and not the use itself ...... We hold that, in the absence of contract, fraud, or estoppel, any man may use his own name, in all legitimate ways, and as the whole or a part of a corporate name." In that case, one of the questions involved was the right to use the word "Remington" as part of a corporate title and in trade insignia. Franklin Remington was a son of one of the inventors of the Remington typewriter and had followed that line of business. He had sold out his interest in a company in which he was originally concerned to the complainants and then embarked in business for himself. There is a strong resemblance between the facts in that case and those in the one we have for consideration. Also, see Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, and 208 U. S. 554; Stix, Baer & Fuller Dry Goods Co. v. Amer. Piano Co., 211 Fed. 271; Lapoint Machine Tool Co. v. J. N. Lapoint Co., 115 Me. 472, 99 A. 348.

The case of White v. Trowbridge, 216 Pa. 11, 64 A. 862, is also pertinent. While the question there was with relation to the use of a surname, it did not directly concern the use of such name as part of a corporate title. There Trowbridge, the inventor of chocolate chips, sold his interest in a partnership, in·

cluding the "good will, rights, property, etc.," and subsequently made the word "Trowbridge" an important part of his advertising. It was held that a retiring partner, in the absence of an agreement to the contrary, was not deprived of the right to use his own name in connection with the conduct of his business by reason of the fact that his surname was a portion of the trademark used by the partnership of which he had been formerly a member.

A leading case that questions the doctrine that the right to use one's own name in business, notwithstanding the prior use of that name by others in a similar business, extends to a corporation of which he is promoter and member is one cited by the appellee and the court below, Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 27 L. R. A. 42. The syllabus in that case goes much farther than the opinion, for it states baldly that the right to use one's own name, notwithstanding the prior use of the name by others, does not extend to a corporation of which he is a promoter and member. The opinion as a whole does not support the summary. It is recognized in a number of the cases that even in the use of one's own name it must be honestly used, and that artifice and deceit shall not be resorted to to mislead the public and attempt to reap the rewards of the efforts of others. In the Higgins case, there was considerable testimony from which the court drew the inference that the name was adopted dishonestly. In the case we are considering, a very different situation is presented, and the plaintiff, both on the trial of the case and in his brief, disavows any intention of charging the defendant with any intent to take business away from him, and it was stated that the plaintiff "is not imputing fraud to his act in questioning his intent, but regardless of his intent, the purity of his motive, the only question for the court is whether the similarity

of the names is such that a party is confused and uncertain as to whom he is dealing with." This completely destroys the force of the Higgins case as applicable to the situation present here.

In the case of Amer. Clay Mfg. Co. v. Amer. Clay Mfg. Co., supra, the Supreme Court recognized two grounds for awarding relief in cases of this general nature; to wit, intent to get an unfair and fraudulent share of another's business, and where there was not an evil intent but there was produced confusion in the public mind and consequent loss to the competitor. A Pennsylvania corporation sought to prevent a corporation organized under the laws of another state from using the name, American Clay Manufacturing Company, and there was not involved a question of the right to use a family name, but rather a use of a previously appropriated artificial title. In other cases where the confusion and consequent loss to a competitor have been relied upon as grounds for relief, there was present an element of fraud and the second ground was resorted to as a makeweight rather than as an exclusive basis for relief. If the Higgins case is authority for the proposition that the same rights to use a family name in an unincorporated business do not extend to a corporation where the name in question is that of one of the corporators and promoters, it is directly contrary to our own cases of Seligman v. Fenton, supra, and White v. Trowbridge, supra.

Here the plaintiff's business was almost exclusively retail in and around the city of Harrisburg, while the business of the defendant was wholesale and but two per cent of his business was carried on in Dauphin County. The court found as a fact that the plaintiff had suffered no pecuniary loss and relied on the inconvenience in telephone and mail communications as a sole basis for its decree.

It is conceded by the defendant that some confusion has arisen by the use of the word "Gates," and it is suggested that a change or addition should be made to the name that would otherwise distinguish it. Both parties are engaged in the coal business, and "Coal" is certainly a proper part of the title of the business of each. They are likewise both entitled to use the word "Gates." In any title of which "Gates" was a part, there would be the same confusion as now exists. John H. Gates and J. Warren Gates were sons of the father who had established the business and had both been reared in it and were entitled to all benefits therefrom, so long as they did not resort to artifice to obtain an unfair share of the trade or mislead the public. They are not competitors, no financial loss has been suffered by the plaintiff, and under the circumstances mere inconvenience was not, in our opinion, sufficient to warrant the interference of a court of equity to require the defendant to change its corporate name. Fair dealing would suggest to the parties concerned that they should each endeavor, not only for their own individual interests, but in the interest of the other to so conduct the business that confusion should be reduced to a minimum, but there is not here ground for equitable relief.

Judgment of the lower court is reversed, and the case is remitted to the court below with directions to dismiss the bill at costs of appellee.