**SAFEWAY STORES, Inc., v. SKLAR.**
**Civ. A. No. 5696.**

District Court, E. D. Pennsylvania.
Nov. 26, 1947.

Evans, Bayard & Frick and Philip H. Strubing, all of Philadelphia, Pa., for plaintiff.

Caesar & Rivise, A. D. Caesar, Max E. Cohen and Benjamin Frank, all of Philadelphia, Pa., for defendant.

GANEY, District Judge.

In this action for alleged infringement of a trade-name and unfair competition, the plaintiff, Safeway Stores, Incorporated, seeks (1) to restrain the defendant from using the name "Safeway Stores" in connection with his retail grocery store, (2) to require him to account for and pay over to it all profits derived by him from the use

of the name "Safeway Stores", and (3) to obtain such other relief to which it may be entitled.

From the evidence presented to it, the court makes the following special

### Findings of Facts.

1. The plaintiff is Safeway Stores, Incorporated, a corporation organized and existing under the laws of the State of Maryland.

2. The defendant is David Sklar, a citizen of the Commonwealth of Pennsylvania, and trades as Safeway Stores.

3. The amount in controversy, exclusive of interest and costs, exceeds $3,000.

4. Plaintiff was incorporated under the name Safeway Stores, Incorporated, on March 24, 1926, and since that time has carried on business under that name.

5. Except for a short time between May 8, 1941 and December 31, 1942, in which it directly operated retail self-service stores in several states, the retail operations of its organization in the United States from 1926 to the end of 1942 were carried on by wholly owned subsidiaries of the plaintiff. During the latter period, some of the stores were operated under the name "Safeway". Since the beginning of 1943, all assets, business and good will of its subsidiaries operating in the United States were acquired by the plaintiff and from that time all its stores, which are of the self-service type, trade under the name "Safeway". Under this same name, plaintiff's subsidiary Safeway Stores, Limited, has been operating a number of grocery stores in' the provinces of the Dominion of Canada, from 1929 to the present.

6. On January 8, 1943, plaintiff procured a certificate of authority from the Commonwealth of Pennsylvania authorizing it to conduct the operation of a retail chain grocery store business and activities incidental thereto in the Commonwealth.

7. On June 10, 1944, the plaintiff registered its corporate name Safeway Stores, Incorporated in the Trade-Mark Division of the United States Patent Office.

8. In May of 1945, the plaintiff began operating in Manheim, Lancaster County, Pennsylvania, an egg center under the name Brantwood Egg Company, Division of Safeway Stores, Incorporated, for the purpose of purchasing, grading and packaging of eggs and shipping them to its various stores in New York and New Jersey. It made no retail sales of eggs in Pennsylvania, but it did sell undergrade eggs at wholesale to various large scale users of that grade of eggs. Manheim is at least 90 miles from Hatboro, Pennsylvania.

9. Although it has not done so on a nationwide scale, the plaintiff has expended annually large sums of money for the advertisement of food products in connection with its stores. These advertisements, which are confined to the immediate vicinity where the plaintiff has its retail stores, prominently feature the name "Safeway". Plaintiff's annual report indicates that it has spent $4,305,151.76 for advertisements during the year of 1945 and that a breakdown of this amount is as follows: Local newspapers, $1,945,319.36; shopping news and free distribution papers, $15,869.05; posters, $5,498.19; handbills, $3,508.91; radio, $56,788.52; and miscellaneous, $96,243.64. The radio advertisements, which emanated from Station WTOP in Washington, D. C., consisted of a half hour, five days a week program featuring several of plaintiff's sponsored brands sold exclusively at its stores. The program is not heard in Hatboro, Pennsylvania, and its environs.

10. Plaintiff's stock is listed on the New York Stock Exchange and is designated in daily published quotations of stock prices under the name "Safeway".

11. On occasions the plaintiff has made seasonal produce buying operations in the Commonwealth of Pennsylvania, but it has not operated a single grocery store or advertised the name "Safeway" in this Commonwealth.

12. However, the plaintiff does operate a number of its stores in parts of states bordering Pennsylvania, namely: 147 stores in the New York City area of New York, 77 in the northern half of New Jersey, and 30 in the southeastern area of Maryland. It also has 124 stores in Washington, D. C. and 81 in the northeastern

part of Virginia. Plaintiff's store nearest to Hatboro, Pennsylvania, is located in Plainfield, New Jersey, which is 37 miles away.

13. As shown by its annual report for the year 1945, the number of stores operated by the plaintiff in the United States totaled 2,302. These stores with the exception of those referred to in paragraph 12, above, are located in states west of the Mississippi River.

14. The number of stores, including those managed by its Canadian subsidiary, operated by the plaintiff and the gross receipts made by them for the years 1936 to 1945, inclusive, are as follows:

| Year | Number of Stores | Gross Receipts |
|------|------------------|----------------|
| 1936 | 3,370 | $346,178,061 |
| 1937 | 3,327 | 381,868,220 |
| 1938 | 3,227 | 368,254,991 |
| 1939 | 2,967 | 385,882,083 |
| 1940 | 2,671 | 399,322,122 |
| 1941 | 2,660 | 475,124,885 |
| 1942 | 2,697 | 611,139,477 |
| 1943 | 2,493 | 588,833,620 |
| 1944 | 2,463 | 656,571,505 |
| 1945 | 2,452 | 664,771,549 |

15. Although the name "Safeway" is known to wholesale dealers in food supplies, as far as the general public of the Commonwealth of Pennsylvania, and more particularly of Hatboro and its surroundings, the name has not become synonymous with, or acquired a special significance with respect to, plaintiff's stores.

16. On September 20, 1945, the defendant registered under the Pennsylvania Fictitious Names Act to do business under the name "Safeway Stores" in Hatboro, Montgomery County, and the City and County of Philadelphia.

17. Since September 28, 1945, the defendant has been operating a self-service retail grocery store under the name "Safeway Stores" in Hatboro, Pennsylvania.

18. This store is located in a housing project accommodating approximately three hundred families and it is so situated with respect to the houses in the project that shoppers from the project do not cross any arterial highways in going to and from it.

19. Despite the fact that he had not owned and operated, either immediately before September 28, 1945, or thereafter, any other retail grocery store, the defendant had in connection with the opening of his store advertised it as "another Safeway Store" and referred to "our buyers" and "their ability" to obtain foods at low prices. In addition, the name "Safeway Stores" appears conspicuously both outside and inside defendant's store, and it was advertised frequently in the local newspaper and in circulars or handbills distributed to customers who frequented the store. Both in the signs on the store and the advertisements, the name "Safeway" appeared more prominently than the word "Stores".

20. Except for several brand names, the food products and articles sold by the defendant at his store are the same as, or related to, those sold by the plaintiff at its stores.

21. To the people of Hatboro and its neighborhood, the plaintiff's stores are unknown; in their minds the name "Safeway" is associated only with defendant's store.

22. Therefore, the customers, in making purchases at defendant's store, were not actually misled into believing that they were buying plaintiff's goods or that they were shopping at one of its stores.

23. The defendant's business has not deprived the plaintiff of any customers, nor has it interfered with or harmed plaintiff's relations with them.

24. The defendant has been connected with the grocery business for twenty-five years.

25. The defendant knew of plaintiff's stores prior to his adoption of the name "Safeway Stores" in connection with his store.

26. The ostensible reason for defendant's adoption of the name "Safeway" was because his store was a safe place in which to shop for the people who lived in the housing project in that they did not need to cross any main highways to gain access thereto. However, his real purpose in adopting the name "Safeway Stores" was

to create the impression that he had more than one store and at the same time to capitalize on the business and credit reputation of the plaintiff so that he could buy a large allotment of supplies from wholesalers during a period when food products were difficult to obtain in large quantities.

27. The plaintiff did not consent to or acquiesce in the defendant's use of the designation "Safeway Stores", and upon discovering that he was using that name, it promptly notified him in writing, on December 17, 1945, to cease using the name in connection with his business. The defendant has refused to do so.

28. Defendant's activities complained of by the plaintiff were confined to the territory of the Commonwealth of Pennsylvania.

### Conclusions of Law.

1. This court has jurisdiction over the parties to and the subject matter of this action.

2. The name "Safeway" has not acquired a secondary meaning with respect to plaintiff's stores as far as the general consuming public of the Commonwealth of Pennsylvania, and more particularly of Hatboro and its vicinity, are concerned.

3. The defendant's use of the name "Safeway" in connection with his store constitutes unfair competition with respect to the plaintiff.

4. The plaintiff is entitled to a permanent injunction against the defendant, his agents, attorneys and employees, restraining them from using the name "Safeway" or any name similar thereto in any manner in connection with defendant's grocery business.

5. The plaintiff is not entitled to an accounting.

### Discussion.

Although it has registered its corporate name, Safeway Stores, Incorporated, under the provisions of the Federal Trade-Mark Act of 1905, as amended, 15 U.S.C.A. § 81 et seq., the plaintiff does not claim a technical violation of its registered trade-mark in this action. It invokes the jurisdiction of this court not under Sec. 24(7) of the Judicial Code, 28 U.S.C.A. § 41(7), but under Sec. 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1), because diversity of citizenship of the parties exists and the requisite jurisdictional amount in controversy is involved. Since all the acts of the defendant which are alleged to be the basis of the complaint have taken place within the boundaries of the Commonwealth, the applicable local law is the law of Pennsylvania, the place of the alleged wrongs.[1] Pecheur Lozenge Co. Inc. v. National Candy Co., Inc., 315 U.S. 666, 62 S. Ct. 853, 86 L.Ed. 1103; Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, certiorari denied 318 U.S. 779, 63 S.Ct. 855, 87 L.Ed. 1147; Adam Hat Stores, Inc. v. Lefco, 3 Cir., 134 F.2d 101. However, in cases involving unfair competition, whether the local or the Federal law is to be applied is not always of particular importance for the principles as announced by the state courts usually do not conflict with those laid down by the Federal courts. This laudable condition appears to exist in the Commonwealth of Pennsylvania.[2] See Coca-Cola Co. v. Bush, D.C.E.D.Pa., 44 F.Supp. 405.

The fact that the plaintiff received a certificate of authority to transact local business in the Commonwealth of Pennsylvania did not in itself give it the exclusive right to use the name "Safeway" in this Commonwealth.[3] Nor did the fact

---

[1] See Annotation in 148 A.L.R. 139.

[2] This is probably because most unfair competition litigation takes place in the federal courts. See Chafee, Unfair Competition (1940) 53 Harv.L.Rev. 1289, 1299.

[3] Section 1002(3) of the Pennsylvania Business Corporation Law of 1933, P.L. 364, Art. X, as amended, 15 P.S. § 2852—1002(3), provides:
"The Department of State shall not issue a certificate of authority to any foreign business corporation: * * *

"(3) Which has a name the same as or deceptively similar to the name of any domestic corporation or any other foreign corporation authorized to do business in this Commonwealth, or the name of any unincorporated body voluntarily registered with the Department of State under any act of Assembly, unless such other domestic or foreign corporation or unincorporated body is about to change its name, or to cease to do business, or is being wound up, or such foreign corporation is about to with-

that the defendant registered to do business by the name "Safeway Stores" pursuant to the Pennsylvania Fictitious Names Act [4] confer any right on him to wrongfully use a name adopted by another. R. H. Macy & Co. Inc. v. Macy's Drug Store, Inc., 3 Cir., 84 F.2d 387; Stork Restaurant, Inc. v. Marcus, D.C.E.D.Pa., 36 F.Supp. 90; Acme Chemical Co. v. Dobkin, D.C.W.D. Pa., 68 F.Supp. 601, 615.

A particular feature of this case is that there is no direct competition between the parties. This poses the question as to whether the plaintiff is to be denied injunctive relief on this account. A case similar to the one before us has not risen in Pennsylvania.[5] The prevailing Federal view is to do away with the rule that competition is an indispensable requirement before the courts will grant relief [6] and to consider the lack of competition as only a factor in the case in the defendant's favor. We think this view should be followed in the instant case.

Even though a trade-name has not been registered, or is incapable of being a valid trade-mark, under the Federal Trade-Mark Act, it may, nevertheless, be given protection against infringement as the result of unfair competition where it has become recognized by the general public as identifying the product of a certain manufacturer or the business place or places of a certain firm. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369; Barton v. Rex-Oil Co., Inc., 3 Cir., 2 F.2d 402, rehearing 29 F.2d 474; Quaker State Oil Refining Co. v. Steinberg, 325

Pa. 273, 189 A. 473; Hartman v. Cohn, 350 Pa. 41, 38 A.2d 22; Thompson-Porcetite Co. v. Harad, 356 Pa. 121, 51 A.2d 605. Since the plaintiff has expended, over a long period of time, large sums of money in advertising the food products it sells in connection with the name "Safeway" in the localities in which its stores are located, we may assume, without deciding, that the name has acquired a secondary meaning in those localities. However this court cannot find as a fact, in the absence of proof to that effect, that the name has acquired a similar status in this Commonwealth. In this respect, the plaintiff has completly failed to meet its burden of proof. Therefore we must conclude that its stores are virtually unknown to the general consuming public in this Commonwealth. As a result, the plaintiff cannot obtain the same advantages which it would otherwise have if the trade-name "Safeway" were widely known here and associated with its stores. See Wall v. Rolls-Royce of America, Inc., 3 Cir. 4 F.2d 333; Sweet Sixteen Co. v. Sweet "16" Shop, 8 Cir., 15 F.2d 920; Buckspan v. Hudson's Bay Co., 5 Cir., 22 F.2d 721; Terminal Barber Shops v. Zoberg, 2 Cir., 28 F.2d 807; Phillips v. Governor & Co., 9 Cir., 79 F.2d 971; White Tower System v. White Castle System, 6 Cir., 90 F.2d 67, certiorari denied 302 U.S. 720, 58 S.Ct. 41, 82 L.Ed. 556; Governor and Company of Adventurers of England Trading into Hudson's Bay v. Hudson Bay Fur Co., D.C.Minn., 33 F.2d 801; Yale & T. Mfg. Co. v. Haber, D.C. E.D.N.Y., 7 F.Supp. 791; Stork Restaurant Inc. v. Marcus, D.C.E.D.Pa., 36 F.Supp. 90; Brass Rail v. Ye Brass Rail, D.C.Mass., 43 F.Supp. 671; Adam Hat Stores v. Scher-

---

draw from doing business in this Commonwealth, and the written consent of such other domestic or foreign corporation or unincorporated body to the adoption of its name or a deceptively similar name has been given and is filed with the statement hereinafter required by this act, or unless such other domestic or foreign corporation has filed with the Department of Revenue a certificate of out of existence: *Provided, That nothing herein contained shall be construed to refer or apply to any assumed or fictitious name required by law to be filed with the Department of State.*" (Italics supplied.)

[4] Act of May 24, 1945, P.L. 967, Secs. 1–13, 54 P.S. §§ 28.1–28.13.

[5] In John H. Gates v. Gates Coal Co., 114 Pa.Super. 157, 174 A. 3, the basis of the court's refusal to enjoin the defendant from using the name Gates in connection with his coal business, in addition to the fact that there was no direct competition between the parties, was his right to use his family name. Also see Heller v. Miller et al., 33 Pa. Dist. & Co. R. 257.

[6] See Callmann, Unfair Competition Without Competition? (1947) 95 Pa.L. Rev. 443; Annotation in 148 A.L.R. 12, 22.

per, D.C.E.D.Wis., 45 F.Supp. 804. Thus where a trade-name has failed to acquire a secondary meaning, the courts will not enjoin the mere use of the name. Yet such name may still be afforded limited protection as against a particular defendant where he has selected the name with some design inimical to the interest of the plaintiff. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 415, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141.

■ Despite the fact that the defendant had been connected with the grocery business for 25 years, he claimed that he never heard of the plaintiff's stores. The reason given by him for his adoption of the designation "Safeway" was that it signified that his store was a safe place in which to shop for the tenants of the housing project in that it would be unnecessary for them to cross arterial highways in order to reach it. Under ordinary circumstances this might be a plausible reason for the adoption of such a designation. But when this reason is taken in connection with the fact that he was in the grocery business for 25 years; that he advertised in the local newspapers, in connection with the opening of his store, that it was "another Safeway Store" and that he referred to "our buyers" and "their ability" to obtain food products at low prices; that his store bears the sign "Safeway Stores"; and that in subsequent newspaper advertisements and in handbills distributed at his store, the plural of the word, store, was used, although he had but a single store and did all the buying himself, the inference that he knew of plaintiff's stores prior to his adoption of the trade name "Safeway Stores" is unavoidable. Compare R. H. Macy & Co., Inc. v. Macy's Drug Store, Inc., supra, at page 388 of 84 F.2d. In this connection the defendant candidly admitted that the purpose for his using the plural of the word, store, was to create the false impression that he had a multiplicity of stores so that he could obtain a larger allotment of food supplies from wholesale dealers. Of course the use of the designation "Safeway" in connection with the word "Stores" aided materially in the creation of that impression since it is reasonable to assume that at least wholesale dealers in food products knew or heard of plaintiff's stores. Consequently, we think the defendant's frank statement reveals the real reason for his adoption of the designation "Safeway", which was to capitalize, at least until his business became well established, on the business reputation and credit of the plaintiff's organization by creating the allusion that there was some trade connection between them or that the plaintiff had expanded its business to that territory. Yet despite this, it does not automatically follow that the defendant thereby intended to harm the plaintiff. As was said by Judge Bard in the Stork Restaurant case, supra, at page 93 of 36 F. Supp.: "However, I will not decide that they had a design inimical to the plaintiff, though in cases of unfair competition, the fraudulent intent is often inferred from facts, sometimes against the defendant's sworn protestations. Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 8 Cir., 206 F. 611. I will believe that they intended to do no more than 'borrow' the value of the name 'The Stork Club'." But even this finding, in our opinion, will not prevent the plaintiff from obtaining injunctive relief where the defendant's acts, as in this case, have created a situation the reasonable likelihood of which is to cause injury to the plaintiff's credit and financial standing, or reputation for integrity and fair dealing. The fundamental reason for this conclusion has been summed up in the oft quoted words of Circuit Judge Learned Hand in Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974, which are as follows: "However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its pos-

sessor and creator, and another can use it only as a mask".

By enjoining the defendant from using the designation "Safeway" in connection with his store, we are aware that the practical effect of such action is to extend protection to plaintiff's trade-name in a territory in which it has only potential customers. However it is felt that defendant's bad faith [7] merits this result.

As for the request for an accounting, it is apparent, under the circumstances of this action, that the plaintiff is not entitled to such relief and that an injunction against the defendant will satisfy the substantive equities between the parties. Stork Restaurant, Inc. v. Marcus, supra, pages 94, 95 of 36 F.Supp.; Acme Chemical Co. v. Dobkin, supra, pages 614, 615 of 68 F.Supp.; Berkley Co. v. Berks, 55 Pa.Dist. & Co.R. 261, 272.

The plaintiff may prepare and submit a decree in accordance with this opinion.

---

[7] See Restatement, Torts, Sec. 732, Comment: a.