59 CCPA

**J. WISS & SONS CO., Appellant,**

v.

**The W. E. BASSETT COMPANY, Appellee.**

**Patent Appeal No. 8694.**

United States Court of Customs and Patent Appeals.

July 13, 1972.

Rehearing Denied Oct. 5, 1972.

Sparrow & Sparrow, New York City, attys. of record, for appellant; Maxwell E. Sparrow, Mark H. Sparrow, New York City, of counsel.

Roy C. Hopgood, New York City, Sandoe, Hopgood & Calimafde, New York City, attys. of record, for appellee; Paul H. Blaustein, New York City, of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Associate Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board.[1] granting appellee's petition to cancel appellant's registration of TRIMLINE, for "shears, scissors, pinking shears, tinner's nips, pruning shears, hedge shears and grass shears."[2] We fully agree with the discussion of the facts of this case in the board's opinion, and will merely briefly summarize them here.

As grounds for cancellation, appellee W. E. Bassett Co. (Bassett) established use and registration[3] of the mark TRIM and marks based on the word TRIM prior to the application for registration of TRIMLINE by appellant J. Wiss & Sons Co. (Wiss). It was established that Bassett began using the mark TRIM on fingernail clippers in 1947 and the line of goods upon which that mark or marks based on that mark were used expanded considerably before appellant's first use of the mark TRIMLINE. Bassett has heavily advertised its marks.

---

1. 162 USPQ 301 (1969).

2. Registration No. 718,541, registered July 18, 1961, applied for December 2, 1960. Appellant counterclaimed for cancellation of three of appellee's registrations and opposed registration of two other marks by appellee. The board ruled against appellant on all of these issues, and these rulings have not been appealed.

3. TRIM, for manicuring emery boards, Registration No. 695,409, March 29, 1960; TRIM-KURV for nail files, Registration No. 693,269, February 16, 1960; TRIMSTER, for nail clipper in a case, Registration No. 672,259, January 6, 1959; TRIMMIT, for a combination tool comprising a knife-like case with a plurality of pivoted blades, Registration No. 657,092, January 14, 1958; TRIM-TRIO, for a combination tool as above, Registration No. 656,074, December 24, 1957; TRIMCLIP, for nail clippers, Registration No. 655,900, December 17, 1957; TRIM-PAC, for a toilet kit consisting of a nail clipper, a nail file and a comb, Registration No. 643,052, March 19, 1957; POCKET TRIM, for a similar toilet kit, Registration No. 643,051, March 19, 1957; TRIM, for finger and toenail clippers, Registration No. 632,793, August 14, 1956; TRIM, for nail files, Registration No. 614,895, October 25, 1955; TRIMETTE, for finger and toe nail clippers, Registration No. 530,527, September 12, 1950; and TRIMCLIP, for nail clippers and cuticle scissors, Registration No. 433,832, registered October 28, 1947, to a John J. Duffy and apparently later transferred to Bassett.

It was stipulated that appellant has sold grass shears under the mark QUICK–TRIM from 1939 to date, with the exception of the war years. At the time Wiss began using TRIMLINE on shears and scissors, it was well acquainted with Bassett's product line and trademark. Wiss' use of the mark includes use on personal grooming items such as barber shears and pocket scissors.

The board held:

> There can be no doubt from the record that Bassett's use of "TRIM" on personal grooming items such as fingernail clippers, toenail clippers, tweezers, nail files and the like substantially antedate[s] Wiss' use of "TRIMLINE" on its shears and scissors. Furthermore, even though Bassett's use of "TRIM" on scissors was subsequent to Wiss['] use of "TRIMLINE" on scissors and shears, Bassett has superior right in "TRIM" as to scissors by virtue of its prior use thereof on such closely related goods as fingernail and toenail clippers and other personal grooming items. [citing cases]

> In view thereof and since "TRIM" and "TRIMLINE" are substantially similar, the term "LINE" merely referring to a line of goods and therefore having no trademark significance, it is adjudged that there is likelihood of confusion and that the continued existence of Wiss' registration is inimical to Bassett's rights in "TRIM".

Before us, appellant Wiss contends, based on the use of QUICK–TRIM, "[i]t is appellant that has the superior right to use 'TRIM' in whatever form on any cutting implement, since it would be using its mark in the normal expansion of business, i. e., from grass shears to scissors and shears." Appellant also argues that TRIM, because of its descriptiveness, is a weak mark which "could not have acquired any secondary meaning due to appellant's long prior and concurrent use of its trademark 'QUICK-

TRIM' and the existence of [certain] third party registrations for 'TRIM' and other marks including 'TRIM' * * *." For similar reasons appellant contends that appellee is not entitled to the protection given the owner of a "family" of trademarks. Finally, appellant asserts that there is no likelihood of confusion between the marks as applied to the goods.

*Opinion*

Appellant's contentions that the mark TRIM is incapable of distinguishing goods is totally without merit. While the term may be highly suggestive of the functions of some of the goods on which it is used, such as nail clippers, it is not so as to other goods, such as nail files, to which it is also applied. More importantly, the record in this case solidly establishes that Bassett has developed a strong secondary meaning for the mark. Even appellant's President, Vice President and one of its Assistant Sales Managers have admitted that they identify TRIM with Bassett. See also W. E. Bassett Co. v. H. C. Cook Co., 156 F. Supp. 209 (D.Conn.1957); W. E. Bassett Co. v. Revlon, Inc., 147 U.S.P.Q. 309 (S.D.N.Y.1965), aff'd 354 F.2d 868 (2d Cir. 1966).

■■ When the identical marks are being used on different lines of goods, and the issue is whether the prior user's line of goods would normally or reasonably expand to include the other line of goods, the answer depends on whether the goods "were of such a nature that purchasers would generally expect them to emanate from the same source." J. C. Hall Co. v. Hallmark Cards, Inc., 340 F.2d 960, 963, 52 C.C.P.A. 981, 985 (1965). We think that where the question of normal expansion of trade arises between *different* marks applied to different lines of goods, the differences between the marks must also be considered. Depending upon that difference, the prior user may not be "expanding" an established trade under an established mark at all. Considering the differences between the marks and between

the product lines in the present case, we are of the opinion that the use of QUICK–TRIM established in this record was not such that a customer seeing TRIMLINE on barber shears or pocket scissors would think that they came from the maker of QUICK–TRIM grass shears.

Under the facts of this case it is unnecessary to determine whether Bassett has established ownership of a family of marks.

As to the issue of likelihood of confusion between Bassett's marks and TRIMLINE, we are unable to improve on the board's reasoning, quoted above.

The decision of the board is affirmed.

Affirmed.