454 A.2d 605

**BRODY'S, INC., Trading as Brody's, Appellant,**

v.

**BRODY BROTHERS, INC., Trading as Brody's.**

Superior Court of Pennsylvania.

Argued Nov. 11, 1980.

Filed Dec. 30, 1982.

Petition for Allowance of Appeal Denied May 4, 1983.

418

Benjamin G. McFate, Oil City, for appellant.

Wayne A. Kablack, Indiana, for appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

PRICE, Judge:

This appeal is from an order that both cancelled appellant Brody's, Incorporated's Pennsylvania registration of the trade name "Brody's", and refused to permanently enjoin appellee Brody Brother's, Incorporated from using the same trade name.

Appellant Brody's, Incorporated ("Oil City Brody's") is a Pennsylvania corporation with its principal place of business in Oil City, Pennsylvania, where since 1939 it has operated a women's and children's clothing store under the name "Brody's". Appellee Brody Brothers, Incorporated ("Indiana Brody's"), also a Pennsylvania corporation, has operated a clothing store for men, women and children in Indiana, Pennsylvania since 1913, also using the name "Brody's". The principals in appellee and appellant corporations are members of the same Brody family responsible for founding both independent entities in the early part of this century. Oil City and Indiana are Western Pennsylvania cities located about 90 miles apart.

The present controversy arises out of appellee Indiana Brody's decision to open a new "Brody's" store in the

Clarion Mall. The Clarion Mall, near Clarion, Pennsylvania, is located approximately 25 miles southeast of Oil City, and about 60 miles north of Indiana. Oil City Brody's moved for a preliminary injunction alleging that use of the "Brody's" trade name in such close proximity to its own store would constitute trade mark infringement and unfair competition. The motion was denied because the mall was not scheduled to open soon enough to cause any immediate harm. Oil City Brody's subsequent motion for a permanent injunction was granted, but the full relief requested was not given. While Oil City Brody's had sought to prevent *any* use of the term "Brody's" in connection with the Clarion Mall Store, the trial court expressly reserved to appellee the right to use its full corporate name, "Brody Brothers, Inc." but prohibited any use or emphasis of the single term "Brody" or "Brody's". Each party filed exceptions to this order, and upon rehearing, the court below dissolved the order and on April 7, 1980 entered a new order denying the injunction, and allowing appellee to use the trade name "Brody's" for its Clarion store.

Oil City Brody's appeals from the April 7 order, asserting two grounds of error in the trial court's denial of injunctive relief. First appellant advances trade name rights inherent in its December 20, 1978 registration of the name "Brody's", in accordance with the Act of May 29, 1956, P.L. (1955) 1855, § 1, 73 P.S. § 15, and argues that the court below improperly cancelled the registration. Second, appellant contends that an injunction is mandated under Pennsylvania's common law of trade marks and unfair competition. We disagree on both counts and affirm.

The lower court correctly precluded Oil City Brody's assertion of statutory rights by cancelling its registration of the trade name "Brody's",[1] in accordance with 73 P.S. § 20.

The statute providing for registration of trade marks and service marks in Pennsylvania requires that all applications for registration must include a statement, made under oath,

1. Registration number 79:01 1011 for "Brody's" in Class 39, Clothing; and registration number 79:01 1038 for "Brody's" in Class 101, Advertising and Business Services.

that the applicant is the owner of the trade-mark or service-mark and that no other person has the right to use such trade-mark or service-mark in this Commonwealth, either in the identical form thereof or in any such near resemblance thereto as might be calculated to deceive or to be mistaken therefor.

73 P.S. § 15.

■ A review of the record leaves no doubt but that the proprietors of Oil City Brody's, at the time it filed a trade mark application for "Brody's", had for a long time been aware that Indiana Brody's (as well as several businesses in other areas of Western Pennsylvania) was operating a clothing store under the same name. This contradicts appellant's sworn statement that "no other person has the right to use" the same or a closely similar mark in Pennsylvania. The Commonwealth's trade mark registration statute provides for the Secretary of the Commonwealth to cancel "[a]ny registration concerning which a court of competent jurisdiction shall find: ... (d) that the registration was obtained fraudulently" 73 P.S. § 20(4).[2] Accordingly we hold that the court below properly ordered cancellation of appellant's trade name registration, and appellant is therefore barred from asserting any rights that would otherwise result from registration of the mark.

■ Respecting Oil City Brody's remaining claim, we note initially that normally under Pennsylvania common law, an injunction will be granted to protect the trade name of a plaintiff who can prove the following three things: first, the plaintiff's right to exclusive use of the name; second, the defendant's use of a name confusingly similar to that name; and third, a likelihood of confusion in plaintiff's competitive area caused by the defendant's use. *Zimmerman v. Holiday Inns of America, Inc.*, 438 Pa. 528, 534–35, 266 A.2d 87, 90 (1970), cert. denied 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971). In the instant case there is no question

2. In addition, 73 P.S. § 20(5) provides for cancellation "[w]hen a court of compctent jurisdiction shall order cancellation of a registration on any ground."

as to the second element, (similarity of the names); both parties claim the right to use an identical trade name, "Brody's". Normally, then, we would focus on the two remaining issues comprising the test for infringement, namely whether Oil City Brody's has proven its right to exclusive use of the trade name "Brody's" in the area of the proposed Clarion Mall Store, and whether the appellee's use of that name in the Clarion Mall is likely to cause confusion as to the source of the services offered there.

██ However, the test for infringement is completely different under Pennsylvania law when, as in the instant case, the trade name sought to be enjoined is also the personal name of the party using it.[3] In such cases, the

3. In the present case, absent Pennsylvania's special rule respecting the use of one's own name as a trade name, Oil City Brody's would have had to have proven secondary meaning in the name "Brody's"; names primarily understood to be personal names are not inherently distinctive and can be protected as trade names only when they have acquired secondary meaning. *See, e.g., Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 439 F.Supp. 1022 (D.Del.1977), rev'd on other grounds 589 F.2d 1225 (3rd Cir.1978). *See generally,* J. McCarthy, Trademarks and Unfair Competition, § 13:2A. "The term 'secondary meaning' encompasses the situation where people in the trade or purchasing public come to think of a word or name as standing for the business of a particular owner." *Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 535, 266 A.2d 87, 90 (1970) *cert. denied* 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971).

"No clear test has emerged in Pennsylvania as a satisfactory method of establishing the existence of a secondary meaning. It is well settled, however, that the burden of proof is upon the party claiming its existence." *Quality Weaving Co. v. Regan,* 245 Pa.Superior Ct. 66, 369 A.2d 296 (1976). *See Miscellaneous, Inc. v. Klein's Fashions, Inc.,* 452 Pa. 62, 305 A.2d 22 (1973). In the instant case, Oil City Brody's advertised in the Clarion area by newspaper and by mailings to charge account customers. Advertising in and of itself will not establish the requisite secondary meaning. *Miscellaneous, Inc. v. Dein's Fashions, Inc., supra; Quaker State Oil Refining Company v. Steinberg,* 325 Pa. 273, 189 A. 473 (1937). Oil City Brody's also presented evidence of confusion among ten Oil City Brody's customers from the Clarion area. Pennsylvania courts recognize that "incidental customer confusion does not establish a secondary meaning in one's use of a word or business name". *Quality Weaving Co. v. Regan, supra.* We believe that the present record sufficiently supports the chancellor's conclusion that Oil City Brody's failed to carry the burden of showing secondary meaning in the name "Brody's" in the Clarion area, *see generally Quality Weaving Co. v. Regan, supra,* and cases cited therein;

otherwise central issue of likelihood of customer confusion bows to the doctrine that:

> [e]very man has the absolute right to use his own name in his business, even though he may thereby interfere with and injure the business of another bearing the same name; provided he does not resort to any artifice, or do any act calculated to mislead the public as to the identity of the establishments, and to produce injury to the other beyond that which results from the similarity of the names.

*Seligman v. Fenton*, 286 Pa. 372, 375, 133 A. 561, 562 (1926). The most recent Pennsylvania Supreme Court decision[4] concerning the use of one's personal name as a trade

we do not so hold, however, because our disposition of this case relies on the rule that absent fraud, every person has a right to use their own name in business, regardless of whether appellant's name has acquired secondary meaning, or whether there results likelihood of customer confusion between the litigants' names.

**4.** We highlight the fact that for over 40 years the Pennsylvania Supreme Court has not had the opportunity to address the issue of trade name rights in personal names, and emphasize that the weight of modern authority among other jurisdictions and among scholarly writers disfavors our rule. Currently, consideration of the likelihood of confusion by customers is viewed as paramount to the black-letter rule that, absent fraudulent intent, each person has an absolute right to use his name as a trade name. As Professor McCarthy has stated:

> In many situations, consumer protection policy demands that a businessman be enjoined from use of his own name so as to eliminate the likelihood of consumer confusion. Customers who are faced with two or more businesses in related fields with the same surname mark are not particularly concerned with the "inalienable" right of anyone to use his own name as a mark. If a likelihood of confusion exists, it exists irrespective of whether the confusingly similar mark is a personal name or not.

J. McCarthy, Trademarks and Unfair Competition, § 13:3 (1973). Hence, "... many modern decisions have shifted the emphasis away from the defendant's subjective mental state, and have placed prime importance upon the issue of likelihood of confusion and consequent consumer deception." *Id.,* § 13:8B. *See, e.g. V.J. Doyle Plumbing Co. v. Doyle,* 120 Ariz. 130, 584 P.2d 594 (1978); *A.W. Cox Dept. Store Co. v. Cox's, Inc.,* 221 S.E.2d 539 (W.Va.1976); *Baker Realty Co. v. Baker,* 228 Ga. 766, 187 S.E.2d 850 (1972).

The modern view favors the issuance of qualified injunctions, such as that originally issued below (by the Honorable H. Ray Pope, P.J., before reversal on reconsideration by the Honorable Merle E. Wiser, P.J.), permitting appellee to use only the name "Brody Brothers, Inc."

name is the 1940 case of *Ralph Brothers Furniture Company v. Ralph*, 338 Pa. 360, 12 A.2d 573, in which the court maintained: "The principle is fundamental that an individual is entitled to the use of his own name in his business, unless he has by contract deprived himself of that right." *Id.*, 338 Pa. at 363, 12 A.2d at 574.[5] We extended the right to include cases such as the instant case, one in which an incorporator's personal name is used by a corporation. *John H. Gates v. Gates Coal Company, Inc.*, 114 Pa.Superior Ct. 157, 174 A. 3 (1934).

■ Applying the above principles to the present case, we are compelled to conclude that, even if appellee's use of its incorporators' family name "Brody's" in the Clarion Mall presents a likelihood of confusion with appellant's name, the use is permitted absent any artifice or act calculated to mislead the public on the part of appellee. Here the evidence supports the chancellor's conclusion that appellee Indiana Brody's employed no artifice or act calculated to deceive the public by proposing to use the name "Brody's" in its Clarion Mall Store. To the contrary, here, as in *Seligman v. Fenton, supra,* there was an express finding of good faith on the part of appellee. Slip. Op. April 7, 1980 at 5. Therefore any commercial harm experienced by appellant Oil City Brody's results from a lawful act of appellee Indiana Brody's: "such inconvenience or loss as may result from an honest use of a person's name in his business, by reason of its interference with the business of another having the same name, is regarded as *damnum absqua*

Such injunctions permit the use of a personal name only insofar as it does not produce a likelihood of confusion.

Whether or not we are sympathetic to a rule different from that enunciated by our Supreme Court in 1940, we are not free, as an intermediate appellate court, to overrule the decisional law of the Supreme Court of Pennsylvania. *Hillbrook Apartments, Inc. v. Nyce Crete Company,* 237 Pa.Superior Ct. 565, 573, 352 A.2d 148, 152 (1975).

5. *See also John H. Gates v. Gates Coal Company, Inc.,* 114 Pa.Superior Ct. 157, 174 A. 3 (1934), in which we stated: "A person cannot make a trademark of his own name, and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business." *Id.,* 114 Pa.Superior Ct. at 161, 174 A. at 4 (citation omitted).

*injuria." Seligman v. Fenton,* 286 Pa. 372 at 375, 133 A. 561 at 562.

Accordingly, the order denying the motion for a permanent injunction is affirmed.