**MOORE PUSH–PIN COMPANY**

v.

**MOORE BUSINESS FORMS, INC.**

**Civ. A. No. 86–6213.**

United States District Court, E.D. Pennsylvania.

Dec. 3, 1987.

---

William H. Eilberg, Jenkintown, Pa., for plaintiff.

Thomas P. Preston, Duane, Morris & Heckscher, Philadelphia, Pa., Robert Van-derhye, Nixon & Vanderhye, Arlington, Va., for defendant.

## MEMORANDUM

LUDWIG, District Judge.

This action concerns both parties' use of "Moore" in the marketing of some of their newer products. Upon hearing, cross-motions for preliminary injunction will be denied for the reasons set forth in this adjudication. Fed.R.Civ.P. 52(a).[1]

The complaint alleges infringements of a common law trademark and, by supplemental complaint, of a Pennsylvania trademark registration, 54 Pa. C.S.A. § 1123 (Purdon 1987) and violation of Pennsylvania's "anti-dilution" statute, 54 Pa.C.S.A. § 1124 (Purdon 1987). Defendant's counterclaim is for infringement of a federally registered trademark, 15 U.S.C. § 1114(1) (1982). Both parties claim false representation under 15 U.S.C. § 1125(a) and common law unfair competition.

The following undisputed facts appear in the joint pretrial order and in the evidence received at hearing:

Plaintiff Moore Push–Pin Company manufactures, packages and distributes various fastening and hanging devices under the name "Moore" and has done so since 1900. Its advertising and sales distribution are national. Its customers include office supply houses and other retailers. As described by its president, its product line consists of items "associated with either hanging something up or pinning something down." (Tr. I at 7). Early products included push-pins, metal picture hangers, tacks, and filing card identification signals. In 1971, it began selling double-sided adhesive tape for mounting pictures and other items on walls.

Originated in Canada—also near the turn of the century—defendant Moore Business Forms, Inc. dates back in the United States to 1946. Its market is nationwide and international; it is the world's largest manu-

---

1. Jurisdiction: 28 U.S.C. § 1331, § 1332, § 1338(b); and 15 U.S.C. § 1121. Plaintiff is incorporated and has its principal place of business in Pennsylvania. Defendant is a Delaware corporation with its principal place of business in New York.

facturer of business forms. Its products are used to record and communicate business information. It sells at wholesale—sometimes in a line called "Rediform"—and also directly to consumers. Its products include a wide variety of preprinted forms, such as custom invoices, checks, mailers, stationery, patient record charts, repair tickets, and routing slips. Some of its early products were pressure sensitive and gummed address and identification labels and "laboratory sheets" [2] that incorporated the use of an adhesive. Defendant federally registered "Moore" for use with business forms on March 29, 1983.

Until perhaps 1985, these two companies coexisted peacefully in the business supply market using the "Moore" designations on their many products. In July 1985, Moore Business Forms began to make what it called a "repositional business form." [3] This is a piece of paper backed with a strip of transfer adhesive that allows it to be affixed to another piece of paper, or virtually any other surface, without forming a permanent bond. [4] Moore Business Forms now offers stock and custom forms with transfer adhesive, including memo pads, note pads, delivery notices, telephone message pads, packing slips, repair tickets, inspection slips, medical record checklists, reservation forms, clearance tags, and so on. These come in a variety of ink and paper colors. Laser graphics, consecutive numbering, perforation, hole punching and alternative adhesive location, varying width and configuration are also available.

About August, 1986 Moore Push–Pin became aware of defendant's transfer adhesive forms named "Note Stix." Its motion would preliminarily enjoin defendant from using "Moore" on its transfer adhesive items and from representing to the

public that its federal trademark registration covers them. [5]

Since October, 1985 Moore Push–Pin has sold a transfer adhesive dispenser under the mark "Moore." This is a roller applicator, that gives paper the same adhesive qualities as the Moore Business Forms or "Post-it" type of product. Also, Moore Push–Pin introduced a transparent, one-sided adhesive tape and plastic clips, advertising the latter on a simulated background of notched computer paper. According to defendant, Moore Push–Pin's marketing of these three products interferes with its federal trademark—as well as its rights acquired through prior marketing of a transparent, single-sided tape and its entrance into the computer supply field in 1976. It would preliminarily enjoin Moore Push–Pin from using "Moore" to sell these items.

In order to obtain a preliminary injunction, the movant must show: (1) a reasonable probability of success on the merits; (2) irreparable injury absent relief; (3) the likelihood of greater harm; and (4) if affected, the public's benefit. *E.g., ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987). Here, neither party's case discloses a reasonable probability of eventual success.

Protection from common law trademark infringement under 15 U.S.C. § 1125(a) depends on priority of use. *Seiko Sporting Goods USA, Inc. v. Kabushiki Kaisha Hattori Tokeiten*, 545 F.Supp. 221, 225 (S.D.N.Y.1982), *aff'd*, 697 F.2d 296 (2d Cir.); *Armstrong Cork Co. v. Armstrong Plastic Covers Co.*, 434 F.Supp. 860, 870 (E.D.Mo. 1977); *Wiener King, Inc. v. Wiener King Corp.*, 407 F.Supp. 1274, 1279–81 (D. N.J. 1976), *rev'd on other grounds*, 546 F.2d 421 (3d Cir.), *cert. denied*, 430 U.S. 916, 97

---

**2.** A specialized form for scientific applications that includes a permanent or releasable adhesive for mounting other sheets of paper.

**3.** Moore Push–Pin refers to this item as a "self-adhering note pad."

**4.** Transfer adhesive is retailed, most commonly, on pads sold by the 3M Company under the "Post-it" trademark, now commonplace in most offices.

**5.** Though Moore Push–Pin does not sell a transfer adhesive product, it is "actively considering doing so in the future." (Plaintiff's Motion for Preliminary Injunction at 4). According to its president, no date is set for the introduction of the product and the necessary production machinery is not in place, but "it's well past the thinking stage." (Tr. I at 57).

S.Ct. 1328, 51 L.Ed.2d 594 (1977), *aff'd*, 577 F.2d 731 (3d Cir.1978).

■ Moore Push–Pin never marketed transfer adhesive forms. As to fasteners and hangers, it is the prior user. It argues that transfer adhesive forms are a normal and reasonable expansion of its product line. *J. Wiss & Sons Co. v. W.E. Bassett Co.*, 462 F.2d 567, 569 (C.C.P.A.1972). *See also Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir. 1978). This argument, however, is not factually convincing. Fasteners and hangers are used for attachment—something onto something else—and, in this sense, they are intermediaries or extrinsic devices, not repositories. Other companies that sell fasteners and hangers have not entered the adhesive forms market. Moore Push–Pin does not sell any products used for recording and transmitting information. Informational forms entail a substantially different function and purpose from Moore Push–Pin's traditional business. The company would have to adopt a new production process. *Scott Paper Co.*, 589 F.2d at 1228. Consumers would not immediately associate adherent paper with Moore Push–Pin simply because the backing was adhesive. *J. Wiss & Sons Co.*, 462 F.2d at 569. Given Moore Business Forms' past use of adhesive forms, consumers would be more inclined to think of transfer adhesive paper as a Moore Business Forms product.

The evidence suggests some potentiality for confusion. However: "Ownership of a trademark does not guarantee total absence of confusion in the marketplace. Selection of a mark with a common surname naturally entails a risk of some uncertainty and the law will not assure absolute protection." *Scott Paper Co.*, 589 F.2d at 1231. On this record it seems unlikely Moore Push–Pin could establish a right to "reach a choking hand" into the market of paper products currently sold by Moore Business Forms. *S.C. Johnson & Son, Inc. v. Johnson*, 175 F.2d 176, 180 (2d Cir.1949), *cert. denied*, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527.

■ For analogous reasons, Moore Business Forms' Section 1125 claim lacks the requisite likelihood of success. This company has not sold fasteners and hangers. Transfer adhesive applicators—in contrast to adhesive paper—as well as transparent, one-sided adhesive tape and plastic paper clips fall squarely within the market in which Moore Push–Pin has carved out priority. The degree of confusion that may result in the future from overlapping markets is highly speculative at this stage. It is not a sensible or sound reason to disallow either party from continuing to use "Moore" in the sale of these particular products.

The common law unfair competition claims do not have greater merit. *Mercury Foam Corp. v. L & N Sales & Marketing*, 625 F.Supp. 87, 91 n. 1 (E.D.Pa.1985) ("Pennsylvania common law [of unfair competition] is identical to the Lanham Act, 15 U.S.C. § 1125, except that the Lanham Act requires interstate commerce"). Moreover, both companies have a good faith explanation for using the "Moore" mark. No one contends that either adopted the name to take advantage of the other's goodwill. *Scott Paper Co.*, 589 F.2d at 1230. *See also Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir.1975), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed. 2d 98 ("Unfair competition is almost universally regarded as a question of whether the defendant is passing off his goods or services as those of the plaintiff ...").

Moore Business Forms enjoys an enforceable federally registered trademark. 15 U.S.C. § 1114(1). However, the impact and scope of such protection is limited to the specific terms of the registration. *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396 (3d Cir.1985), *cert. denied*, 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257. Moore Business Forms' registrations of the "Moore" mark extend to business forms, forms handling equipment, and the leasing and rental of such equipment. None of these is generous enough to encompass transfer adhesive applicators, transparent one-sided adhesive tape, or plastic paper clips. Even if they were, Moore Business Forms' earliest registra-

tion of that mark was in 1983. "[A] federal registrant has the right to use the trademark in commerce 'except to the extent that such use infringes what valid right the defendants have acquired by their continuous use of the same mark prior to plaintiffs' federal registration.'" *Natural Footwear Ltd.*, 760 F.2d at 1395 (quoting *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904, 907 (7th Cir.1968)). Moore Push–Pin has been using "Moore" in the manufacture, sale and distribution of fasteners and hangers since 1900. Moore Business Forms' rights under the federal registration would be limited by the extent of that prior use. *Id.* Therefore, Moore Business Forms' request for a preliminary injunction based on 15 U.S.C. § 1114(1) must be denied.

The first count added by Moore Push–Pin in its supplemental complaint is based on alleged infringement of its state registration of "Moore" under 54 Pa. C.S.A. § 1123 (Purdon 1987).[6] The registration became effective November 13, 1986. Here, also, Moore Push–Pin did not show likely success. Moore Business Forms first used "Moore" in the sale of the adhesive forms in July, 1985, over a year before Moore Push–Pin's state registration. Consequently, Moore Push-Pin is barred from asserting rights to use "Moore" as to the sale of similar forms. *Brody's, Inc. v. Brody Bros., Inc.*, 308 Pa.Super. 417, 421, 454 A.2d 605, 607 (1982). Notably, Moore Push–Pin's registration covers the use of "Moore" with "adhesive tapes, tape dispensers, push-pins, tacks, picture hangers, [and] adhesive-backed rectangles"—only. Forms with transfer adhesive are not listed in the registration. Moreover, Moore Business Forms' federal registration, in 1983, put Moore Push–Pin on constructive notice of defendant's claim of ownership of the mark. *Natural Footwear Ltd.*, 760 F.2d at 1395. Thereafter, Moore Push–Pin could

not gain rights superior to Moore Business Forms. *Bucci v. Burger King Corp.*, 341 F.Supp. 223, 225 (E.D.Pa.1972). *See also American Automobile Ass'n v. AAA Insurance Agency, Inc.*, 618 F.Supp. 787, 798 (W.D.Tex.1985) (one cannot acquire rights under state law superior to another's federal service mark rights).

Moore Push–Pin also supplemented a count under Pennsylvania's "anti-dilution" statute, 54 Pa. C.S.A. § 1124 (Purdon 1987).

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

No decision construing this Pennsylvania statute has been reported. To the extent that the count rests on Moore Push–Pin's state registration, it is likely to be subject to the same limitations as the Section 1123 claim. If based on priority of use, success, here again, is improbable. Assuming the statute is not preempted in these circumstances,[7] Moore Business Forms may still have a statutory defense. Section 1126 provides that "[n]othing in this chapter shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law." Moore Business Forms bears the name of its founder, Samuel J. Moore. "[T]he absence of predatory intent ... is a relevant factor in assessing a claim under the anti-dilution statute." *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 626 (2d Cir.1983) (interpreting similar New York statute).

Nor did Moore Push–Pin meet its burden of proof that its mark is "distinctive" or

---

**6.** Moore Push–Pin moved for leave to file a supplemental complaint on December 8, 1986, shortly after the action was begun. Leave was not granted until November 18, 1987, having been postponed inadvertently.

**7.** *But see American Automobile Ass'n v. AAA Insurance Agency, Inc.*, 618 F.Supp. 787, 798

(W.D.Tex.1985) ("state law cannot defeat or limit in any way the protection given to federally registered marks under the Lanham Act"). *See also United States Jaycees v. Commodities Magazine, Inc.*, 661 F.Supp. 1360, 1366–69 (N.D.Iowa 1987).

has acquired a "secondary meaning"—an essential element of an anti-dilution claim. *E.g., Miss Universe, Inc. v. Patricelli,* 753 F.2d 235, 238 (2d Cir.1985). An antidilution plaintiff must show that its mark has become synonymous with its products in the minds of a significant portion of consumers and that the mark evokes favorable images of plaintiff or its products. *Wedgwood Homes, Inc. v. Lund,* 294 Or. 493, 496–97, 659 P.2d 377, 380–81 (1983). *See also Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 535, 266 A.2d 87, 90 (1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971) ("secondary meaning encompasses the situation where people in the public come to think of a word or name as standing for the business of a particular owner"). No survey or other evidence pointed to an association between "Moore" and Moore Push–Pin in the mind of a large segment of the public or the populace where Moore Push–Pin does business. Considering Moore Business Forms' position in the office supply market since 1946, Moore Push–Pin would not appear able to show such an association. *See, e.g., Zimmerman,* 438 Pa. at 536–37, 266 A.2d at 91. (Plaintiff could not establish secondary meaning for the use of "Holiday" in an area where "Holiday" was used extensively as to establishments other than plaintiff's even though witnesses mistakenly believed the parties' motels were part of same system.) Both Moores—Push–Pin and Business Forms—have engaged in extensive marketing and advertising since their inceptions. Moore Business Forms is much larger and many current consumers may have become familiar with Moore Business Forms' products first—and perhaps not at all with Moore Push–Pin. *Zimmerman,* 438 Pa. at 537, 266 A.2d at 91. As noted before, Moore Push–Pin will have great difficulty in establishing exclusive rights to use a mark that defendant has also used for more than 40 years.

Both parties' requests for preliminary injunction must be refused.